**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 13-cv-02444–RM

JAMES HART,

      Plaintiff,

v.

CREDIT SERVICE COMPANY, INC.,

      Defendant.

---

**ORDER REGARDING SUMMARY JUDGMENT**

---

    This matter is before the Court on cross motions for summary judgment filed by Plaintiff James Hart ("Plaintiff") (ECF No. 15) and Defendant Credit Service Company, Inc. ("Defendant" or "CSC") (ECF No. 16).[1]  This is a case arising under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*.  Jurisdiction is proper pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

    **I.  BACKGROUND**

    **A.  Legal Background**

    Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  Plaintiff's FDCPA claim against CSC, brought under 15 U.S.C. § 1692, alleges that CSC violated: § 1692(d) by engaging in behavior the natural consequence of which was to harass, oppress or abuse the Plaintiff in

---

[1] Defendant's Motion for Summary Judgment is mistitled as "Plaintiff's Motion for Summary Judgment."

connection with the collection of a debt; § 1692(e)(2) by misrepresenting the character, amount and legal status of the debt; and § 1692(f) by using unfair and unconscionable means to collect a debt.

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994).  Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000); *Carey v. U.S. Postal Service*, 812 F.2d 621, 623 (10th Cir. 1987). *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986).

A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable jury could return a verdict for either party.  *Anderson*, 477 U.S. at 248.  The Court must resolve factual ambiguities against the moving party, thus favoring the right to a trial.  *Quaker State Mini-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995); *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

**B.  Facts**

The following facts are undisputed unless otherwise noted.  Plaintiff incurred a debt for the cost of vacuum cleaner, for which he paid $150 down and financed the remainder; the total amount financed was $2,174.14.  (ECF No. 15-3, "Hart Affidavit," at 2; ECF No. 17-1, "Colorado Retail Installment Contract," at 2.)  The debt was initially owed to Clean Air Safety

2

("CAS"), the company which sold the vacuum, and then to its successor, Advanced Air

Solutions, Inc. ("Advanced").  (ECF No. 17-1; ECF No. 15-3 at 2; ECF No. 16-2, "Gaetz

Affidavit," at 1.)  CAS sold or assigned the debt to Preferred Credit, Inc. ("Preferred") pursuant

to an agreement.  (ECF No. 16-2 at 1.)  That agreement provided that if Preferred did not receive

payment from Plaintiff, Preferred would then receive payment from Advanced, and Advanced

would have the right to collect from Plaintiff.  (ECF No. 16-3, "Affidavit of Henry Hall," at 1.)

Plaintiff did not pay the debt to Preferred. (*Id*.)  Preferred then was paid the amount due by

Advanced. (*Id*.)  As related to Plaintiff, Preferred charged off its account and issued an IRS form

1099-C, Cancellation of Debt. (ECF No. 15-3 at 3; ECF No. 16-2 at 2.)  Advanced then placed

the debt, at that time totaling $1899.91, with CSC for collection. (ECF No. 16-3 at 1.)

In May of 2013, CSC received the account and mailed a notice to Plaintiff.  (ECF No. 15-

4, "Defendant's Answers to Interrogatories," at 8.)    By this time, Plaintiff had received the

1099-C form from Preferred showing $1899.91 on line 2 as "Amount of debt discharged."  (ECF

No. 15-3 at 3; ECF No. 15-4 at 8; ECF No. 16-4 at 1.)  In July of 2013, CSC began making

collection calls.  Plaintiff told CSC that he disputed the debt.  (ECF No. 15-3 at 3)  CSC noted

that the account was disputed, but then resumed collection calls after an investigation revealed

the foregoing.  (ECF No. 15-2 at 6-9.)

In addition, Plaintiff contends that he returned the vacuum cleaner to Advanced and that,

consequently, Preferred cancelled or discharged his debt.  (ECF No. 15-3.)  This contention, as

least as it pertains to Preferred's actions, is disputed by CSC which tendered an affidavit from

the Vice President of Preferred.  (ECF No. 16-2.)

## II.    DISCUSSION

Plaintiff's Complaint included claims based on three separate provisions of the FDCPA, but as to 15 U.S.C. §§ 1692(d) and (f), Plaintiff has presented neither argument nor evidence regarding harassing behaviors or unfair or unconscionable means on the part of CSC.  Plaintiff only specifically referenced 15 U.S.C. § 1692(e) in his summary judgment brief.  Defendant also moved for summary judgment on all claims, and in response to that motion, Plaintiff alleged only that CSC violated 15 U.S.C. § 1692(e).  This Order will substantively discuss only the § 1692(e) argument.  The Court finds that no independent evidence exists to support either of Plaintiff's other two claims, separate and apart from the claim that Defendant attempted to collect a debt which had been discharged.  While cast as alternative legal theories, there is simply one core event which Plaintiff claims was in violation of the relevant statute—the attempt to collect a "discharged" debt.

Plaintiff's argument that CSC acted in contravention of the FDCPA rests on two issues: (1) whether he returned the vacuum cleaner to Advanced in exchange for full settlement of the debt by Preferred; and (2) whether the Form 1099-C legally constituted "debt forgiveness" by Preferred, (ECF No. 15 at 3), such that CSC's attempts to collect on the debt amounted to a violation of the FDCPA.  These issues collapse into one.

As to the first issue, whether or not Plaintiff returned the vacuum cleaner is of little legal significance absent some indication that the purported return actually settled his debt.[2]  Plaintiff has offered only his affidavit and the collection notes from CSC in support of his contention. His

---

[2] The contract by which Plaintiff purchased the vacuum cleaner contained a cancellation provision which required the return of the vacuum.  The purchase could be cancelled within three business days from the date of purchase. There is no suggestion by Plaintiff that his purported return of the vacuum was pursuant to the cancellation provision and the fact that he paid down the cost of the vacuum cleaner would be inconsistent with any such claim. (ECF No. 17-1.)

affidavit does nothing to establish that his debt was settled beyond pointing to issuance of the form 1099-C. The affidavit merely says that "I was not satisfied with my purchase and returned the vacuum cleaner to Advanced Air Solutions. There was a balance of $1899.91 for the vacuum. I contacted Preferred Credit and explained I returned the product, and Preferred credit cancelled my debt. In 2012 I was issued a '1099c' form." (ECF No. 15-3 at 2-3.)

To the extent that this language may seemingly suggest the possibility of some other statement or additional communication which created a settlement, Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment (ECF No. 18) makes clear that this is not the case. There, Plaintiff states that he is relying on the 1099-C for his claim of settlement. Plaintiff sets forth the relevant facts as being "that he disputed the debt as he had returned the vacuum cleaner, and had received a notice of debt forgiveness from the creditor." (ECF No. 18 at 2.) His brief goes on to state that CSC received this "evidence of the debt's extinguishment." (*Id*.) The only communication which was described or presented to CSC was the 1099-C. And the collection notes confirm this.

The collection notes show that an "account in dispute" flag was placed on Plaintiff's account, and that CSC then reviewed the 1099-C and inquired as to whether this form indeed resolved the debt. (ECF No. 15-2 at 6.) The notes go on to relate an inquiry as to the meaning of the 1099-C, and a response that "the 1099C form is for tax purposed and does not absolve them of the debt... it is something that has to be added to income because they got money and did not pay it back." (ECF No. 15-2 at 7.) There is then a notice that it is "ok to continue collections," as well as a note that the "1099 was sent in error and 2nd coll agency sent 1099 whn they shouldn't of the bal is owed if [Plaintiff] has proff that this was paid besides the 1099 then will send to clnt for review per our info bal is still owed." (*Id*.)

As reflected in the collection notes, Plaintiff never submitted any evidence beyond the 1099-C form, discussed below, that indicated that his debt was resolved.  He has presented none to the Court.  Thus, the issue turns on the legal significance of the 1099-C—the second issue in this matter.

As to the direct issue of whether the 1099-C constituted a notice of debt forgiveness, the answer is clearly no.  In a prior case in the District of Colorado, this exact issue was raised and thoroughly discussed.  *See Kelly v. Wolpoff & Abramson, L.L.P.*, 634 F.Supp.2d 1202 (D. Colo. 2008).  This Court agrees with the analysis in that case and finds that the issuance of a 1099-C does not, without more, indicate that a debt has actually been discharged.  As that Court reasoned:

> Plaintiff's theory of debt extinguishment is premised upon the assumption that Defendant's "charging off" of Plaintiff's debt … somehow "extinguished" this debt as a matter of law…. [But] in the absence of any competent evidence suggesting that either (1) [the creditor] discharged Plaintiff['s]  debt, or (2) her debt somehow otherwise became taxable income to her, Plaintiff's invocation of case law holding that the discharge of debt precludes a creditor from continuing debt collection efforts is utterly irrelevant.

*Id*. at 1208-1211.  Here, we have much the same situation, with Plaintiff citing inapposite case law and presenting only the 1099-C as the exclusive evidence for debt cancellation.  As *Kelly* explained, companies are required to issue 1099-C forms under certain circumstances due to reporting requirements that are entirely distinct from whether the debt is actually extinguished.  Plaintiff's mere receipt of a 1099-C form did not constitute extinguishment of his underlying debt, and without evidence that the debt was extinguished, Plaintiff has no evidence that CSC acted in contravention of the statute in trying to collect a debt.

6

Given the Court's present ruling that the issuance of the 1099-C does not equal extinguishment of the debt, and therefore CSC did not violate the statute, it is unnecessary for the Court to reach CSC's second grounds for summary judgment, that of *bona fide* error.

**III.     CONCLUSION**

Accordingly, the Court ORDERS as follows:

(1) Defendant's Motion for Summary Judgment is GRANTED;

(2) Plaintiff's Motion for Summary Judgment is DENIED;

(3) All dates and deadlines, including the upcoming trial dates, are hereby VACATED;

(4) Judgment shall be entered in favor of Defendant on all claims.

DATED this 15th day of October, 2014.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge